Good morning. May it please the Court, Counsel, I'm going to reserve about 4 minutes for rebuttal. I'd like to start off my argument this morning focusing on the two entrapment issues, and then I will take a little bit of time talking about the enhancement for the firearm and, of course, the issue that the Court wanted me to argue, which was the error in sentencing. As the Court is aware, Mr. Ramirez sort of raised an entrapment defense. He brought out some issues regarding entrapment during the trial. I submit that the facts related to the entrapment defense, as it applies to a verdict of guilt or not guilty, also applies on the sentencing entrapment, because the whole series of facts relate to the government's conduct in setting the scene and in setting At the guilt phase, we're looking at plain error review, correct? Yes. Because this was not requested. That's correct. And your client was an eager participant, as I read this record, and had been involved with possessing extremely large amounts of marijuana in the past. This didn't seem at all out of his normal ballpark. Okay. Let's talk about that. Mr. Ramirez was anything but eager with respect to this offense. He had a history of being a drug courier, and his earlier conviction, for which he was on supervised release at the time of this offense, involved him transporting multiple loads of marijuana from the District of Arizona into Michigan. And that was over a 3-year period. We don't know how many loads from the record he transported. We don't know what was the quantity of each load. We just know that it was estimated that the total amount over that 3-year period was around 10,000 pounds of marijuana, which, I grant you, is a lot. But that was his history. He doesn't have a history of being an organizer. He doesn't have a history of being a drug rip-off artist. Now, what happened to him was... He doesn't have a history with cocaine. No. There is no cocaine charge in his history at all. And that's one of the factors that I submit constitutes outrageous government conduct. What happened in this case is, October 2010, he's doing some deal for 60 pounds of marijuana with the government's informant, who at the time was a confidential informant. She wasn't supposed to be doing her own deals. He says that he lost that load. It was 60 pounds. He lost it because he got kidnapped by the buyers. She says he ripped him off. Several months later, I think about six months later, after she had been unsuccessful in tracking down Mr. Ramirez to make him pay for the lost load, her FBI handler notices that she's not driving her normal vehicles and asks her about it. She tells the FBI handler that it's because she had to pay for a lost load, but she lies about when that occurred. And the FBI handler says, well, let's get him back. And that's the basis for going after Mr. Ramirez is to get revenge for an FBI informant who is doing something she is blatantly forbidden from doing. Let me, if I may, move you to some of the sentencing issues which are of concern to me. Okay. With respect to the sentencing entrapment, as distinct from the guilt phase that you made, and I was not able to find specific findings on the part of the district court one way or another on that claim. He didn't make any. Okay. I mean, the PSI basically, the issue was raised. Punted. The probation officer didn't resolve it. Right. Says I can't decide this, and the district court didn't. So regardless of whether you're right or wrong, wouldn't we have to send it back to the district court in the first instance? It doesn't matter what we think of it. It's not our bailiwick initially. Isn't that the only possible outcome, is to send that back? Well, this Court should send it back to the district court, but at this point in time with the ruling in U.S. v. Cortez, it's now a jury question. So I would. Sentencing entrapment? Yes. So I would submit that Mr. Ramirez is entitled to a new trial where this issue can be raised. Is that retroactive? Well, you know, the case has been pending on appeal, and Cortez was issued in, I believe, October of 2013 after the opening brief was filed. And I did address it in my reply brief. So it's not really asking the Court to apply something retroactive. It's a matter of law that came out while this case has been pending on appeal, so it wasn't resolved. I mean, you didn't. You weren't trial counsel, I assume, right? No, I was not. Trial counsel didn't ask for the jury to resolve the sentencing entrapment issue? No, he did not, because ---- It's not plain error for the Court not to have granted a ---- Well ---- I mean, I just don't ---- that doesn't seem feasible to me at all. Okay. Well, take Apprendi and take Blakely. You know, once you have those rulings, then if you're going to send it back for resentencing, then the question is, well, if you're going to send it back for resentencing and you have these new rules that it's a jury question, shouldn't you let a jury decide that? Well, yes. I mean, I ---- I mean, that's ----  And that's why I think you were jumping ---- Well, there are a lot of reasons. Well, I mean, look, this judge who sentenced your client is a very experienced judge. He's actually a very ---- Yes, he is. ---- fair and careful judge. He listened at some length to the arguments. It's clear that he wasn't persuaded. I don't see anything to be gained by sending it back and telling the judge, I guess you would say, what, to tell us why you didn't believe that he should grant what's in essence a downward departure, right, because it's mainly the cocaine. That really is problematic. I agree. But the judge heard the arguments. It's not like we have any doubt as to what his ruling was on that. Well, you know, Judge Watford, I agree with you that Judge Collins is a very attentive and very smart judge. But in this case, he sentenced Mr. Ramirez to two counts for which he had never even been charged or convicted because he was just following what was written in the presentence report. So at some point, we have to recognize we all make mistakes and there is an issue about the cocaine because Mr. Ramirez had never had a connection with the cocaine. And I do want to speak a little bit about why this is so important, why there is sentencing entrapment, particularly as to the cocaine. Could we go back, though, to the question? Because I don't know how we could decide that myself. But I understand that possibly there's some implicit finding. I don't know that that's sufficient. But the issue that was that you just raised about being sentenced to the wrong on the wrong counts, which was in our order for the parties to discuss, I understood the response from the government to be that it wouldn't have made any difference to the actual sentence. Is that what is your response to that? Okay. First of all, you have the Fifth Amendment to the U.S. without due process of law. What follows from that is you cannot sentence somebody to any amount of time for a crime for which he hasn't been charged and for which he hasn't been found guilty. Well, but what if there's just a typo and they put a 5 instead of a 4 in front of the subsection number? It isn't a typo, Your Honor. I know that. But it can't be true that no matter how trivial the mistake, you get a do-over. So would you just respond specifically to what I'm asking, which is are the punishments identical? Is there any possibility that the sentence would have been different? There is a possibility because the sentences are not necessarily identical. The maximum is certainly still available. The minimum mandatory of 20 years was only on the charge involving the cocaine which was count one, which is the conspiracy charge. And then ---- There was no mistake as to that count. Correct. And count four as to the attempted possession of cocaine charge. But the other two were there was the count four, the judge sentenced him on conspiracy to possess cocaine, which was not charged. And so on counts three and four, he technically should have gotten different sentences. They could have been concurrent. He could have been ---- The crime is just grouped, right? It was grouped, but he has a right to have the right charges and he has the right to have his pre-sentence report be correct. The judgment and commitment order is correct, right? The judgment and commitment order are correct. But the judge might not have given him 300 months on every single count. The judgment and commitment order has the right sentences listed? The judgment has the right. The right counts? Yes. But, of course, the sentence is the oral pronouncement of sentence. Yes. That's the law. That's wrong. Not the judgment and commitment. That's right. And for me at least, if somebody's charged with attempted possession, that's a lot less serious than conspiracy. Exactly. A lot less. Exactly. And you don't know whether Judge Collins would have sentenced him to 300 months on the attempt if he had recognized that he was reading, that he was ---- But wait, wait. That's what I'm ---- help me on this. And I hate to see all your time get consumed on this, because it seems to me a totally collateral issue. But the sentence, what's driving the sentence is the quantity of drugs. And that's going to be the same regardless of whether you call it attempt, possession with intent, or conspiracy, right? The quantity is still going to drive what the guidelines are. The quantity drives it. Yes. The quantity drives it, but you still have an illegal sentence. And I'd really like to talk about the other issues.  All right. I want to hear what you have to say about the cocaine. All right. As to the cocaine, and this is why the cocaine should be thrown out completely, Mr. Ramirez had ---- With respect to the May count. Sorry? With respect to the May count. With respect to both counts, Your Honor. Because George Ramirez had never dealt in cocaine. The issue was Pauline Grijalva calls him multiple times and she says, you need to make this right for me. You lost a load. It starts out with, you're going to pick up 500 pounds of marijuana and you can give me what you owe me and you keep the rest for yourself. And he says to her, no, you'll take half and we'll be even. Somebody who's eager to deal in a large quantity of marijuana isn't going to say that. He clearly wanted to get her off his back. He clearly was going to pay his accomplice who was actually going to get the marijuana with the remainder and he just wanted to get out of it because he didn't want her after him for losing the load. There is no discussion in May about him stealing cocaine as well. She makes a mention at the beginning of the conversation where she says to him, last time, if I'm not mistaken, they hid the 10 keys inside the mota, which is the marijuana. That's an absolutely ridiculous statement. Nobody's going to stick kilos of cocaine inside a bale of marijuana. But he doesn't respond to that at all. And then she says to him, so there's also going to be money. Make sure you grab everything. And that's when he says, okay. He did not conspire in May to steal any cocaine. The next time, they had the dry run at the government's orchestration. And I will point out to the Court, the government could have arrested Mr. Ramirez right then and there. They had the conspiracy for the marijuana. They had the attempt to possess. They had what they needed to put him away. They wanted to get more drugs involved. They wanted to put him in a position where he had to have a 20-year minimum mandatory. So what they did the next time was they was Pauline said to him, the next time there's going to be 10 keys of marijuana, of cocaine, and it's going to be in the charcoal bags. And is he eager? He says to her, I have to work tomorrow. I'm not even going to be there. That's not somebody who's really interested in dealing in a large quantity of drugs. If he were truly ---- But he doesn't say to her, whoa, whoa, whoa, cocaine. No. That's not my thing. Hey, I'm a marijuana person. You're right. But he says, I'm not going to be there. I have to work tomorrow, which indicates that he really isn't interested. He doesn't care. He just wants to get it over with. And it was the government that introduced this specifically to trigger that 20-year minimum mandatory. I see I have a minimum ---- So that's sentencing entrapment you're talking about. Yes. Yes. And ---- You may save the rest of your time if you'd like. Thank you. And we'll give you a little bit more because we've taken up a lot of it with questions. Thank you, Your Honor. Good morning, Your Honor.  I'm Chris Cabanillas from the District of Arizona. And the government respectfully asks this Court to affirm the convictions and sentences. And I'd like to address entrapment first. As the Court has noted, the defendant was, to quote Judge Graber, an eager participant, and Judge Watford never turned down the cocaine. I think that stuff is relevant because, as this Court said in black, entrapment, you know, involves a situation where the defendant has to be induced, plus he cannot be predisposed. And the District Court did make a finding that the defendant was predisposed. I have some concerns at the sentencing stage that I'd like to go over with you, if I may. Sure. Let's assume for the sake of this question that some amount of cocaine may be involved in the sentencing, that there isn't complete sentencing entrapment with regard to the amount. I'm a little bit confused as to why it ends up being 20 instead of 10. Because there never was supposed to be 20 on the location, correct? It was always 10. Because there were two separate acts in this case. Well, but let me give you a sort of folksy example, and you can tell me where my thinking goes wrong. Let's say I've conspired to go to your house and steal your new car. And I get there and I realize that it's still daylight and the neighbor is watching and I've broken in, but I think, well, this is pretty bad time to steal the car, so I leave. And I come back the next day and I, you know, and now I'm ready to steal the car. Have I stolen two cars? I guess that's how I'm kind of looking at this, as it's the same 10 pounds that don't exist. Kilos. Excuse me, 10 kilos that don't exist. But it's the same one each time. It's not two of them. And I don't understand how that gets to be 20. Your Honor, I submit that the first time, both the defendant and I would submit that the co-defendant, Figueroa, were under the impression there was going to be 500 pounds of marijuana and 10 kilos of cocaine. Correct. And then they go in, and remember, there's a break-in to the storage unit on both dates, two break-ins separated by two weeks. The defendant's under the impression the first load has been, has left. That's one load. The second load now, Figueroa shows up and he's breaking in. So to go back to my example then, you would say you had your Chevy in the garage on day one, and when I came back, it was the Subaru. So it was actually two cars? Actually, I think the analogy, Your Honor, is let's say that he broke in to steal that. He didn't take your car at the time. That's an attempt on that date. Right. He goes up the next day, he breaks in, and he steals it. Those are two different acts. Yes, of course they are, but it's the same car. And so the question is, is it the same 10 kilos each time, or is it two sets of 10 kilos? I would submit two sets of 10 kilos. Well, then it has to be the Chevy and the Subaru for that to work, because otherwise you're conspiring or attempting to steal only one car. And here the question is, are you conspiring or attempting to steal one load, which you're foiled on the first occasion, but you get to go back on the second occasion for the same thing? And that's my question. I guess I would submit, I mean, maybe I'm not following the car analogy as well as I should be, but if it is a Chevy and a Subaru, maybe that's what I'm saying, because we have one load that they anticipate being there on May 13th, and then we have a different load. How do we know it's a different load? Because they went in, and then they left without taking anything and without seeing there was money there. They end the story. They also could have assumed that, oh, they didn't put anything here this time. No, because I think that as the recordings establish in black, the recordings were very important because it shows what the communication is between the informant and the defendant and what the expectations were. And we have the first break-in where the defendant's present watching his guys break in. Yeah. We have the second one where he doesn't show up because he's at work and he sends his son, and that's the recording. You know, he says he's not going to be there at work. Does it have to do with whether it's the same hypothetical load of cocaine or not? I guess I would say in response, Your Honor, is when it comes to sentencing entrapment, this Court looks in black, too. It's not entrapment. No, it's not about entrapment. It's about just figuring out how much he would be responsible for it. Is it one conspiracy to deal with 10 kilos, or is it a conspiracy to deal with 20? That has nothing to do with entrapment. It's a drug quantity calculation issue. I would say that the relevant conduct here is 20 kilos. Where is there any evidence of that or any finding by a preponderance of that? Because we have a negotiation for a stealing of 500 kilos of drugs and 10 kilos on May 13th. And then we have the ---- Well, stop. That's what there is a conspiracy to do. And the first time they try to do it, they are foiled. And the second time, they are more successful. But it's ---- I don't understand how you get to two loads out of that. And if that was the conspiracy ---- And two separate break-ins, too. If that was the conspiracy in May, why didn't the grand jury charge that in May? The grand jury didn't mention cocaine in the count relating to the one count relating to May had no mention of cocaine. They apparently didn't find probable cause to believe that cocaine was involved. Well, in count one, it encompasses from a time to June 1st. It's true the government charged 10 kilos only. That's true. But what the jury is charged and what it finds is relevant to setting the stat max and minimum. And the difference between 10 and 20 isn't going to change that. And that's relevant ---- The jury didn't find anything about the quantity. I'm sorry? The jury didn't find anything about the quantity. The jury did find the quantity of 10 kilos on the June ---- Yes. On the conspiracy and the June. Yes. 10 kilos. But my point is that the district court is not constrained by the jury's weight finding other than for triggering the maximum. The court can make a finding by a guideline. And the court made no finding. The court did find that entrapment didn't apply. Well, the court made no finding about whether it was 10 kilos of cocaine or 20 kilos. Well, the court accepted the PSR, which had 20. And the PSI ---- Without objection. The PSI misstated the facts. The PSI said another 10 kilos. Where did they get that from? Not from the indictment and not from the evidence at trial. Actually, I would respectfully disagree, Your Honor, and here's why. Count 1, again, they heard the evidence about the separate negotiation and conspiracy to break into the storage unit on May 13th. They heard about the separate negotiation and conspiracy to break in to ---- on June 1st. And I would submit to you that those are two separate actions and that the PSR writer was correct in adding up the cocaine to add 20. Now, again, no objection. So when there's no objection, the court ---- The conspiracy in Count 1 begins on June 2nd. It says actually up until a time until. As I recall, Your Honor, am I wrong about that? No. It says from a time unknown. You're correct. From a time unknown to honor about June 2nd. Yes, Your Honor. Here's my problem with why this seems to matter. As we stated in the order, the judge when pronouncing sentence appeared to think there were two conspiracies, which is what you're arguing. But that isn't what he was convicted of. He was convicted of a single conspiracy. And a single conspiracy to try to get the same item twice is not the same as two conspiracies. And so ---- I misspoke when I said two conspiracies. That was my fault just now. I misspoke because there's Count 1 that deals with conspiracies. But what you have are two separate actions that are an attempt and a possession. Well, I understand that. But I don't know that the district court understood that at the time of sentencing because of the misstatement about what the four counts were. I would submit to you then what I said in the letter, and that is that that mistake did not have an effect on the sentence. And we can say ---- How can we know that? Because we have concurrent terms given during the exact same counts. If somebody had stood up and said, you know what, Your Honor, this count was actually this and this count was actually that, do we think it would have made a difference to the sentence? Because I believe the record supports that it would not have. And that's what I was trying to get at in the letter, is that we have guideline range that wouldn't have changed. We have guideline parameters that wouldn't have changed. The stat max and minimum were the same. And the sentences were the same across the board. So you're talking about a difference that I would submit does not justify a remand to the district court for resentencing. Can I ask on the issue that my colleagues have been questioning you about, the extra 10 kilos. Yes, Your Honor. How many offense levels did that add to, Mr. Ramirez? I believe I calculated in one of my footnotes in the brief that it would have been if you used 10 kilos instead of 20, it's a two-level difference in the guideline range. And I submitted that it wouldn't have made a difference to the sentence because the court was already given an opportunity to go below that and chose not to. Yes, but we have to always start with the right guideline range. I mean, that's kind of now black-letter law. If there's a mistake in the guideline range, the district court has to start over. I guess I would submit on, and I'm not sure if it would be because of, if you're saying that there was an incorrect addition of what the cocaine was, if it's a guideline, again, that was not objected to, and I would submit that it's their burden to show a violation of substantial rights. And I guess on this record, we would submit they haven't. Of course, the court could disagree, but that would be our argument. But a trial judge would want to know when he's considering whether to vary downward or whether to go up above the mandatory minimum, where he's starting with in terms of the guidelines. And the Supreme Court, and I think every circuit have said, even though the guidelines are advisory, you start there. And it might matter a lot to a judge whether you start at a level 24 versus a level 12. Now, I know in this case, it's only a two-level decrease, but, you know. I guess, oh, I'm sorry, Your Honor. No, go ahead. I was just going to say that I remember that there was an awful lot of discussion about the defendant's criminal history in this case. Yeah. And, you know, when it comes to entrapment, I see, you know, I'm getting low on time. I do want to say, you know, when it comes to black, we don't have anything like that in terms of, you know, there was no trolling for targets here. They were aware that he was a prior drug dealer. I respectfully disagree with the suggestion that predisposition rides on what type of drug. There was no reluctance shown. There was eagerness to the extreme. You know, I'm willing, I'm ready to go on Thursday. You know, I need it.  You know, eagerness, eagerness, eagerness throughout this. And I would also note the defendant at trial was being very, very careful about not bringing up entrapment because it was going to open the door to all that 404P about the 10,000 pounds or kilos this Court already was aware of. Can I ask you this just on the sentencing entrapment front? I guess it just seems problematic when you, the government, are introducing a drug that the defendant had, as far as we know, no prior involvement in. Right? With the marijuana, I'm certainly with you that we can look at his past conviction and so 500 pounds, that doesn't seem out of line with probably quantities he's used to. But when you switch over to cocaine, I mean, the government picks 10 kilos, but it could have picked 100, 1,000. I mean, what's to stop the, you know what I'm saying? It's just, I don't know. No, I understand, Your Honor. I do. And, you know, this Court has said in black that those entrapment, sentencing entrapment issues are very fact-specific. And in this case, we have two things that I'd like to note with that. First of all, for sentencing entrapment, you have to show the government pressures a defendant to purchase or sell more drugs than he otherwise would. Two, for the purpose of increasing the applicable sentence. And I don't think we have either of those here. Well, what other purpose would there be in this case? They had a done deal with 500 pounds of marijuana. And at very last minute said, oh, yeah, and there's some cocaine, too. Is that okay? Your Honor. But what point does that serve in the staying, other than to enhance the sentence? Your Honor, I would submit that the record controls here and the district, in the district court, the agent at trial testified it was just an arbitrary number. He was asked why five. Why did he do it at all? What was the point of adding cocaine to the mix, other than to add sentencing time for the defendant? Your Honor, I guess I would submit that there is no evidence that it was done to increase his sentence. Well, is there evidence that it was done for any vaguely rational purpose of any kind? The record at ER 156 to 158 states it was just an arbitrary number. And again, the defendant. That gets to Judge Watford's point, doesn't it? If they really wanted to increase the sentence, they could have said 100. And you wind up not with assistant U.S. attorneys necessarily manipulating sentencing, but with DEA agents and state drug agents manipulating sentencing, particularly since there was no drugs there. They basically. But there was. It's one thing when you're saying come and meet me on a street corner or in a warehouse and you actually give them 10 kilos. Well, actually, there were drugs here. How much? There was marijuana. But how much cocaine was there? There was no cocaine. It was in the, you know, the defendant was under the impression it was going to be in charcoal bags. And, of course, Figueroa is loading them up, so he obviously thinks that there's going to be cocaine in there. But my point is it's really important in this Court's standard, not only the pressuring, but for the purpose of increasing the applicable sentence. I do not believe we have that here. Well, when we can't figure out any other purpose, why isn't that a reasonable inference? Or actually, since the district court didn't respond specifically to this argument, why wouldn't that be a reasonable thing for the district court to say, is that there's no other apparent purpose for dropping cocaine into the mix at the last moment? I don't think the defendant can have it both ways, Your Honor. I think that at trial the defendant was trying not to suggest anything about entrapment. To say on appeal that there was entrapment when only evidence is that we have an agent saying it was an arbitrary number, I don't believe rises to the level of sentencing entrapment based on this Court's cases, because we do not have for the purpose of increasing the sentence. And there's no – and on plain error review, I would submit that that's not shown. Well, but on sentencing, didn't he make the argument that there was entrapment in sentencing? Excuse me?  That's not plain error review in the district court. You're right, but then harmlessness. Okay. Then harmlessness. Forgive me, that was entrapment. Why is it reasonably foreseeable to Mr. Ramirez that Figueroa, or however he pronounces it, Figueroa, was going to have a gun with him? Your Honor, that goes back to all the testimony that we have. And I see that I'm seven seconds from – Please answer. Okay. Thank you. We have all the testimony and evidence from the – not testimony, the recordings from the defendant talking about his violent background, that he shot somebody in the face. He's fully aware that this is a violent type of an action, drug dealing, and we would submit that all of that supports it. Again, we have an undisputed PSR that's laying out facts demonstrating the violent nature, and we think there's enough to demonstrate the two-level enhancement. Thank you, counsel. Thank you, Your Honor. Ms. Leavitt, you have a little bit of rebuttal time remaining. All right. Let's talk about the gun issue real quick. First of all, there were no conversations between either Mr. Figueroa and Mr. Ramirez or between Mr. Ramirez and the confidential informant, Ms. Grijalva, about using a gun. Moreover, she repeatedly told him that at the storage unit, nobody's ever there. It's safe. So there would be no reason for Mr. Ramirez to think that anybody needs to bring a gun along because there isn't anybody guarding it. She said to him, all you have to do is bring the bolt cutters, go in there, and get the stuff. So there's no reasonable foreseeability there for the use of a gun. Additionally, under the Rosemond case, which the U.S. Supreme Court decided last March, the standard now is there has to be evidence that the defendant actually knew and was a part of it. That was an aiding and abetting case. So it was quite different, quite different than the sentencing context, where it had to be proved beyond a reasonable doubt in the context of an element of the crime. And here we're looking at a sentencing enhancement, which is different. And Mr. Ramirez was acquitted of the gun charges, and there's no jury finding for that sentence enhancement. Well, that doesn't mean he didn't know that Figueroa would carry a weapon. Well, there's no evidence that he knew. There's no evidence that he talked with Figueroa about carrying a gun. And all the evidence is that the locker was a safe place and all he needed was bolt cutters. So there's no foreseeability here that Mr. Ramirez would possess or that Mr. Figueroa would go with a gun the second time. First time, he didn't even have a gun. So why would Mr. Ramirez think so? Did the sentencing judge make a finding by a preponderance of the evidence about the foreseeability question? He did not. He just accepted what was in the pre-sentence report and found that everything was right according to the guidelines. Well, on this issue, the PSR did make a recommended finding on those. Yes. And the judge just he didn't make any specific findings, but he just said here's what I'm going to do. Did defense counsel go to the judge and say we disagree with the probation officer's findings on this, so therefore let us argue that and don't just accept it? You know, I honestly don't remember. I'm sorry. Isn't that what typically happens if the probation officer resolves a conflict between the prosecutor and the defense? The defense lawyer, if he or she disagrees, or the prosecutor, if they disagree, has the right to go back to the judge at the sentencing and say we want to focus on this question, even though the probation said something different. May I have one final word about the sentencing entrapment with respect to the cocaine? Briefly. Thank you. The statement was made that Mr. Ramirez never turned down the deal when the cocaine was brought up. And what I want this Court to recall is Pauline Grijalva made a very telling statement on the witness stand when she was talking about his need to pay back the lost load. She said he knows how this works. This isn't his first rodeo. And what I think that says to us here today is that Mr. Ramirez knew that whatever she told him was in that storage locker was what he had to go and get, whether he liked it or not. Because if he didn't, he was going to be in big trouble from her for losing that load of 60 pounds of marijuana the previous October. Thank you, counsel. Thank you. We appreciate the arguments of both of you. And that segment of this consolidated case is submitted and we'll move to United States v. Figueroa. Good morning, Your Honor. My name is Tom Higgins. I'm Mr. Figueroa's appellate attorney. I would like to reserve no time. I want to put it all together for you in my ten minutes. I'm going to start with a hypothetical of my own. I am a mid-range dope dealer. I need some cocaine. I decide to get a kilo from my source. My source is Gavinius. And we arranged to meet on a Thursday in December at the Starbucks at Sutter in Stockton. The streets aren't important because they're all Starbucks. But we arranged to meet. There is one there, right? There is one there. But I arranged to meet her to get the kilo. It's December. I stay there until they close. She does not show up. I call the next morning. Couldn't get her that night. Call and call and call. Finally, excuse. Car broke down. And the phone was left out of the charger. Okay. So let's get together Friday night. Same thing happens. I have a sick kid. You see, Ms. Gavinius is a typical dope dealer. She is unreliable, unfocused, and self-centered. And she doesn't really care. So finally on Monday, we get together. We meet at the Starbucks. She hands me a gift-wrapped present with a bow on it, which is a kilo of cocaine. And I hand her a gift-wrapped present, which is $25,000. And we get busted. No one in this courtroom would think that I'm going to get busted for conspiracy to possess five kilos of cocaine. I mean, it's not an equation. And I don't. I get arrested for conspiracy on the one kilo and the substantive underlying count of possession within ten on the same kilo. As the case goes on, Ms. Gavinius rolls over on me, trying to get a 5K 1.1, and I am left with pleading to the charge, exactly as Mr. Figueroa did here. The one thing that no one has brought up so far, either in the companion case of Ramirez or in Mr. Figueroa, is if you look at count one of the indictment, it combines the marijuana from May 13th and June 2nd. 466 kilograms. But it does not combine the May 13th and June 2nd cocaine. It says 10 kilograms. So count four is the attempted possession because there never is really any drugs here. It's all a government sting. But look at the proceedings. On the 11th of October, 2012, Mr. Ramirez, because of stuff that's happened, pleads to all seven counts in the indictment. But the only judicial officer involved in this thing that got it right was Magistrate Ratteau at the change of plea on that date. And I never read transcripts in oral argument, but this is important because the government chose the language and the charges. Rest assured, they did not call Mr. Figueroa and his attorney and say, by the way, what would you like to be indicted for? That's not it. They picked it. They combined the marijuana. They put in 10 kilograms. Then when it got in front of Magistrate Judge Ratteau on the 11th of October, the exchange, and this is in page 19 of the excerpts of record, for sentencing purposes, the government will have to prove that the amount in cocaine involved in the conspiracy is 10 kilograms, and the amount of marijuana involved was 466. That's exactly what count 1 says. Later on in page 20 of the transcripts, with respect to count 4, the government would have to prove that the amount of cocaine involved in the transaction was 10 kilograms of cocaine. Do you understand the sentencing factors? And finally, once more, she comes back in the excerpt of record, page 23. On the second occasion, on June 10th, that's a mistake. It was June 2nd. Did you believe that there would also be, in addition to the 500 pounds of marijuana, 10 kilograms of cocaine? Answer yes. So the problem here is, and it's been raised in the briefs and in questions from Your Honors, what difference does it make? It's 10 kilograms, 20 kilograms. You're talking minimal mandatories. If you go through the sentencing where Judge Collins, and he's my favorite judge. I love Judge Collins. We're not your favorites? No, no. Up until today, Judge Collins was my favorite judge. But anyway, he is just great. I often tell people I have nine of them on the Supreme Court. He's a great judge. But anyway, what happened here is the indictment drawn by the government, the change of plea, who the government attorney, Ryan DeJoe, sat through and didn't say anything about, up until sentencing, and now we have 20 kilograms of cocaine. The thrust by the government is that it doesn't make any difference. This is 10 or this is 20. If you read the sentencing transcript, he is constantly saying, Mr. Figueroa, I wish I could not do this. I really don't think this. He goes over and over that. And his attorney, Mr. Dan Cooper, at the sentencing, tried to get him to do the minimum mandatory on the cocaine case and the 84-month, 7-year enhancement on the gun case consecutive for a total of 17 years. That's why, in response to Your Honor's question about how do we know he wouldn't have done the same thing, we don't. In fact, Mr. Cooper is not going to be his attorney. There's going to be another attorney if you send this back. And we don't know what that judge is going to do. I want to make sure I'm not getting lost here. For your client, we're just talking about the doubling of the cocaine, right? Correct. Well, there's the acceptance of responsibility. I'm not dealing with sentencing. He's entitled to that. But, I mean, no one has suggested that it doesn't make any difference whether it's 10 or 20. Who suggested that? Not even them. Well, I got the drift from reading Ms. Cabanillas' brief and your questions and stuff. As she said a few minutes ago. What's the impact on the guidelines range, I guess? Well, the guidelines, my calculation is four levels from 34 to 30. So that's a big difference. What I don't think she is considering is the probation department does a marijuana equivalent analysis. So at 20 kilos, they add 4,000 pounds to the 460 or 4,000 to the 466 kilograms. At 10, it's only 2,000. So I got four levels different. No, that's what I'm saying. Substantial. I don't know why you said that people are saying it doesn't make a difference. Of course it makes a difference. That's why we're talking about it. And I guess I thought Judge Graber's hypothetical sort of put the question in the nicest way. Well, I was actually going to do my hypothetical before she did. And they're both about the same. I like hers better, actually. And also, it has not been brought up, but the Bureau of Prisons uses that PSI to calculate risk and a lot of things like that. So it has to be correct. Well, in the case of your client, the fact that there was a gun would also affect the scoring at the Bureau of Prisons. It would. I am not challenging those things. My client was a bonehead on June 2nd and took the gun. So I would like to go into a couple things on the question of waiver, because it was not brought up at sentencing about the 20-kilogram or 10-kilogram discrepancy. And I think what happens is the cases here starting in 2009 with U.S. v. Charles, U.S. v. Cruz, and later in 2011 on U.S. v. Tapia lay out the four-step approach as to plane error. And Your Honors knows what it is. I'm not going to do it. But the definition of plane is answered in U.S. v. Zalapa in 2007 is obvious and clear. So the question becomes are substantial rights affected, which is the third step, or four, whether or not the decision they're looking at goes to fairness, integrity, or public opinion of the judiciary, which is a little odd step. But anyway, that's what it says. So I would do it here. And I'd answer the third one on substantial rights in three parts. One, Gall v. United States by the Supreme Court in 2007 says there is a right to have an accurately determined guidelines. The second one is that in, as I calculate, a level 34 to 30 is substantial. And finally, that Emmeline in 2005 says that any illegal sentence is flat, improper. Finally, the fairness, integrity, and illegal sentence, that's kind of strange. But I would think that being sentenced for something you didn't do, didn't plead guilty to, and didn't agree to and get more time is kind of unfair. And I would say that that's the type of question that they are referring to with the third section, which is the public perception of the judiciary. And with that, we'll conclude my remarks. Thank you. Thank you, Mr. Higgins. Morning, Your Honor. I don't know if I'm supposed to announce again, but Chris Cabanez on behalf of the District of Arizona. Obviously, our arguments are going to be similar, except in this particular case we have the question of the defendant's admissions and what effect it has. First, the admission to the weight is relevant to trigger the statutory minimum and mandatory. And that would have been enough just over 5 kilos. So the defendant's admission to 10 was enough to trigger that. Plus, a district court is not constrained by the defendant's plea to weight. He, the district court, he or she is entitled to still make guideline determinations about the total weight for guideline purposes. And we're back to the same discussion we had earlier. And I was going to say, though, in this context, we have the defendant also making post-arrest admissions, which I would submit, again, undisputed PSR. We have paragraph 11 where he talks about his, he arranged with Ramirez to steal 10 kilograms of cocaine and 500 pounds of marijuana. They talk about him receiving instructions on May 13th. And, again, this is his statements set forth in the PSR. They proceed to unlock the storage unit, and then they didn't find any contraband. And it says, Within one week, Ramirez and Figueroa entered into a similar arrangement to steal an equal amount of contraband and money from the same storage unit. We didn't say an equal amount. The probation officer did. Yes, but it was undisputed, I guess. I'm not. The problem with the pre-sentence report in this case is the use of the English language by the probation officer, an equal amount, another quantity, more, whereas the reality is it was the same hypothetical 10 kilograms of cocaine. And I guess I would reiterate for purposes of this argument, Your Honor, that we had two separate break-ins, two separate thoughts that there's going to be drugs here. They're charging him with burglary. Two separate entries into the units, two separate actions to obtain, 510 and then 510. Now, that, again, the Court could agree or disagree with that, but that's what we would submit. And also when you're talking about the total weight for guideline purposes, you're talking about preponderance. The cases the defense relies on in the brief are all cases where the Court's weight finding exceeded what the jury's verdict found. And we don't have that here. Cases like Banuelos, et cetera. But in this case, don't you have this additional problem? In your normal police, I know you're relying on his statements post-arrest, but in a normal police situation where there's a plea bargain, the plea agreement will typically say, and the defendant agrees that he is accountable for X amount of drugs. This guy didn't want to go through with the plea that was originally agreed to because he didn't want to testify against his co-defendant. So he decided to plead to the entire indictment. The government has nothing to say about that. If somebody wants to plead to the entire indictment, they can walk into court and do it. So there's no agreed-upon statement of facts at all in this case. We don't have a trial where facts were developed, and we don't have a signed statement of facts to which the defendant agrees. All we've got is the indictment, and the indictment has 10 kilograms of cocaine. I would respectfully disagree, Your Honor, because this Court has stated that in a PSR that is undisputed, the Court can consider that. And so we have an undisputed PSR here that hooks the defendant up with an action on May 13th, an action on June 1st, adds up the weight to 20 kilos, and that's undisputed, and I think this Court can consider that. I would also submit that, you know, under the relevant conduct provision, you're responsible for reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity, and that gets us to the same two acts. With regard to the violation of substantial rights, I would submit again that this is a situation where the court details the defendant's lengthy criminal history and so then the sentence would not have changed. Can you remind me? We're talking about plain error review for Mr. Figueroa because there was just simply never an objection lodged against the 20-kilo quantity? Correct. Whereas, if I remember with Mr. Ramirez, there was during when the first pre-sentence came out, but then not with the second or something like that? As I recall, there was a sentencing entrapment argument made at sentencing in Ramirez's case, but there was no challenge to the PSR. Not sentencing entrapment, just drug quantity. Oh, drug quantity. As I recall, there was no objection here at all to this PSR and the total 20 kilos, no. For Mr. Figueroa. For Mr. Figueroa, right. Got it. Okay. So it's just straight plain error review. Correct. I mean, if we agreed with Mr. Ramirez, let's say, on the argument that it should have been 10 instead of 20, obviously that same logic would apply to Mr. Figueroa's case. You would say that, what, we would perhaps not be able to grant relief to Mr. Figueroa because of plain error review? Well, plain error review does have impact when a defendant raises an argument that he hasn't raised below, and when you think about all of the statements the district court made in this case. He does make a statement, though, where he says, I don't think I can go below I don't, I can't remember exactly how he phrased it, but I don't think I can go below the guidelines. You know, I'm really sorry. I mean, he's basically saying, look, I'm not going to sentence you below 188. Now, I don't know whether that suggests that if the guideline range was lower, would he have gone below that or would he, you know, have stuck to the bottom of that range. I can't answer that, but I think that based on the discussion about his criminal history and everything else, I think that the defense is hard-pressed under plain error review to show a violation of substantial rights. Is 180 the mandatory minimum here? 188, I think that was the bottom of the guideline range. No, no, no. The statutory mandatory minimum, is it 180 or 120? No, it would be 120, I think, because it was 10 years, I think, times 12. It would be 120 mandatory minimum for the drugs and then consecutive 7 for the weapon. Correct. Oh, yeah, that's right, 7. Yeah. Okay. And then as far as the third point, I just want to say that, you know, there have been cases where we have agreed to remand when somebody hasn't gotten the third point. I haven't seen another one where the government has not agreed that this has to be sent back. The reason that this is different, Your Honor, is because I would submit that the record shows trial preparation would have occurred. There was no other reason given below other than the incorrect one that I could see. What do you mean, the incorrect one, I'm sorry? Well, you've said that the you can't deny the third point for acceptance of responsibility only because there is potentially an appeal, right? Yes, but on plein air review, he would have to show. Wait, let me. Oh, I'm sorry. So as I understood the record here and the PSR, the only reason that was ever given to the district court was that there was no waiver of the right to appeal. I think, Your Honor, the record shows that the government did not move the third point. It is now incumbent upon the defendant to say, and particularly on plein air review, that that decision was arbitrary, and I don't believe the record could support that when you have him withdrawing. Well, the PSR says it was because there was no waiver of appeal rights. And you've just said that that's what the district court accepted was the PSR. So how can you now come in and say, well, we had some other reason that we never told anybody? Well, actually, I think that the defendant would have to show that it was done exclusively for that reason. And I guess my argument would be that on this record, when you have a co-defendant case, one going to trial, we have the government withdrawing from the plea agreement on August 7th. The case is set for trial on November 6th. He pleads guilty on October 11th, which is barely three weeks before trial, that the record supports the presence of trial preparation. And for that reason, that's the reason why we did not agree to remand on a third point like we would in some other cases where we've had, like, Vanegas-Ortiz was my case where, you know, I acknowledged in the letter that it seemed that the guideline was retroactively applicable and et cetera. But those are fast-track cases in 1326 where it was usually there was a notice filed that we're not doing it because he failed to waive appeal. Those are different situations than this kind of a case where you have a trial case and where, and again, I submit on plain air review, the defense would have to show that the decision not to move was arbitrary and was solely based on the refusal to waive appeal. And I would submit that the record as a whole doesn't allow them to do that in this kind of a trial case where common sense and the record both support that there would have been trial preparation. So that's my argument on that. With that, I guess I would ask the Court to affirm the convictions and sentences. Thank you. Thank you, counsel. Both cases are now submitted, and we again appreciate the arguments of counsel. We'll take about a 10-minute recess. All right. We're going to take another 10 minutes.
judges: Friedman, Graber, Watford